### GREENEWALT v. STANLEY CO. OF AMERICA.
### No. 684.

District Court, D. Delaware.
March 29, 1930.

William G. Mahaffy, of Wilmington, Del., and Frank S. Busser, of Philadelphia, Pa., for plaintiff.

William H. Foulk, of Wilmington, Del., and Joseph G. Denny, Jr., of Philadelphia, Pa., for defendant.

MORRIS, District Judge.

Patent No. 1,481,132, for "Method of and Means for Associating Light and Music," issued to Mrs. Mary Hallock Greenewalt January 15, 1924, upon an application filed August 30, 1918. An application for a reissue was filed October 15, 1924, and the patent was reissued as No. 16,825 on December 20, 1927. Mrs. Greenewalt now charges the Stanley Company of America with infringement of claims 7 to 17, inclusive, of the reissued patent. The defenses are both invalidity and noninfringement.

The object of the invention, as set out in the specification, "is to associate with musical or articulate sounds in various tones or shades a certain arbitrary system of brightening or darkening effects, with or without color accompaniment, peculiarly adapted to express or to complement the emotions produced by musical notes and tones in order that the pleasure derived by the individual through the sense of hearing may be enhanced through the sense of sight."

Claim 10 may be considered as typical. It calls for "the method of combining sound and light for æsthetic expression, consisting in producing audible sounds in timed, rhythmic relationship, flooding with light an area within the area of audibility of the sound and simultaneously producing gradual variations in the color and intensity of the light in timed relationship with the emotional or æsthetic content of a succession of such sounds."

The art of associating light, or light and color, with music, did not originate with Mrs. Greenewalt. It is quite old. In fact, the defendant finds its origin at the world's dawning when the birds first greeted with song the rising sun as it dispersed the shades of darkness with fingers of growing light of ever changing hue. The plaintiff concedes that not nature alone but man as well had combined light and music before she made her contribution to this æsthetic art. The emotions aroused by the stage had been quickened by the simulated rumble of the thunder and the growing darkness pierced by the lightning's flash. The "color organ" of Bishop and others had mechanically and inflexibly united each musical note to a chosen color in an arbitrary color scale.

Mrs. Greenewalt's conception, however, was not the mere union of light and music.

It was not to make light and music, howsoever correlated, an embellishment of the stage. On the contrary, as I understand it, it was, broadly and generally stated, the employment of light, with or without color, in such relationship to music that the thoughts and feelings and the emotional and æsthetic effects intended to be expressed, aroused, and created by the musical composition might be the more keenly appreciated, sensed, and felt. A true artist, and knowing that no sound finds in any specific color an exact counterpart, Mrs. Greenewalt recoiled from the thought that specific colors arbitrarily and inflexibly tied to specific sounds could serve to interpret the shades of thought and feeling of music or enhance its emotional and æsthetic effect. She apprehended clearly the incongruity of mechanical standardization in the art of appealing to human sensibilities. She realized too that few musical compositions excite in every director or performer the same thoughts, feelings, and sensations and that each director or performer must be left free to express through varying intensity and color of light his or her own interpretation of the composition rendered. A scientist as well as an artist, Mrs. Greenewalt knew that, to be pleasing to the human ear, sound must be produced in a succession of distinct sounds. She likewise knew that, to be pleasing to the human eye, changes in color and intensity of light must be made, not by a rapid succession of distinct flashes, but by gradual variations.

The quoted claim thus becomes plain, simple, and clear. It calls for a method of combining sound and light for æsthetic expression, not for their use in connection with the stage. The area of audibility of the music must be wholly or partially flooded with light. The variations in the color and intensity of the light must be both gradual and in timed relationship with the emotional or æsthetic content of the music. Of this method of combining sound and light there is no anticipation by the simultaneity of the songs of the birds and the gradual variations in the color and intensity of the light at sunrise. The changing light is not there synchronized with the emotional or æsthetic content of the songs. The variations in light and color are the same without regard to whether the birds are singing or silent, and, if singing, without regard to the emotional or æsthetic content of the songs. By their requirement of "gradual variations," the claims discard and disclaim all methods by which each musical note brings a change in the color and intensity of light.

The defendant urges, however, that, though so restricted, the claims were nevertheless anticipated and nullified by prior knowledge and use, particularly by Mrs. Greenewalt herself, more than two years prior to the application for the patent in suit. It is true that, if the defendant's contention that there was, in fact, a public use of the invention more than two years prior to the date of the application for the original patent is sound, the claims are invalid for the exclusive right which inventors have to their inventions, or, otherwise expressed, the right which inventors have to patents for their inventions, is not a natural right, but is a statutory one. Moreover, the patent, though granted, is nevertheless invalid if the statutory conditions authorizing the grant of a patent did not in fact exist. The statute here pertinent is Rev. St. § 4886 (35 USCA § 31), which makes it impossible to obtain a valid patent for an invention that was in public use more than two years prior to the date of the application for the patent for such invention.

The original patent, of which the patent in suit is a reissue, was applied for August 30, 1918. Consequently, it is obvious that, if the invention of the claims was in public use prior to August, 1916, the claims are invalid, howsoever great the intrinsic worth and merit of the invention may be. As early as 1905 Mrs. Greenewalt conceived the idea of accompanying her own musical interpretations with lighting effects. Howsoever nebulous or uncertain that idea was at its inception, it became, prior to April 15, 1911, the definite and clearly defined process of the claims, for upon that day Mrs. Greenewalt made her first experimental demonstration in the presence of two or three persons in Egyptian Hall, Wanamaker's, Philadelphia, at which time she carried out the process of the claims, though but crudely, because of the difficulty, after exhaustive search, of finding means by which that process could be readily put into effect. To produce the desired effect of gradual variations in the color and intensity of light in timed relationship with the emotional or æsthetic contents of the compositions played, she joined together pieces of colored gelatine in such manner that there was a gradual change from color to color, and passed the film so made before a light in a definite, predetermined, timed relationship between the music and the variations in the light passing through the filter medium. By reason of its experimental character and its privacy, the performance at Egyptian Hall possibly fell short of a public use of the invention of the claims. But in 1914 Mrs.

Greenewalt used, at Perkiomen Seminary and at Dayton, Ohio, the invention of the claims at public concerts at which admissions were charged. It is true that even at that date the means employed for carrying the invention into effect were still more or less crude, but they were sufficient to enable the invention to be there practiced and used. Nothing more was required to bring the patent within the ban of the statute above referred to.

As a consequence, and without regard to any other defense, the bill of complaint must be dismissed.